UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

REAL PROPERTY COMMONLY KNOWN
AS 113 MAYNARD AVENUE, N.W.,
GRAND RAPIDS, MICHIGAN, KENT
COUNTY, TOGETHER WITH ALL
IMPROVEMENTS, FIXTURES AND
APPURTENANCES THERETO,

    Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:10-cv-00062

## OPINION

This matter is before the Court on Plaintiff's Motion for Summary Judgment. (Dkt. #64-65). The parties consented to proceed before me for all further proceedings, including the trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to me. (Dkt. #31). As articulated herein, the Court **grants** Plaintiff's motion.

## BACKGROUND

The parties do not dispute the facts of this case. The United States seeks civil forfeiture of 113 Maynard Avenue, N.W. and Joshua Vance asserts a claim against the property. The property was purchased using the proceeds of bank fraud committed by James Jett, who is now serving 66 months in federal prison.

Jett and Vance first became friends while playing on the same hockey team in 2004. The two also became roommates, during which time Vance studied medicine at Michigan State University and Jett worked as a home builder. Beginning in 2006, the two also did business with one another. At that time, Vance moved into Jett's home on Ridgetop Drive in Byron Center, Michigan. Less than a year later, Jett sold that home to Vance. This transaction was, as the government concedes, legal.[1] After the sale, Vance rented the master bedroom of the Ridgetop home back to Jett without memorializing the lease agreement. Jett never paid rent to Vance pursuant to this oral agreement.

Their business relations also included an unsecured loan made by Vance to Jett to fund the operating expenses of Studio 64, a Grand Rapids hair salon started by Jett in 2007. Vance had no idea that Studio 64 was anything other than a legitimate business. However, Vance also failed to memorialize this loan by reducing it to a written agreement.

Vance asserts and the Government does not dispute that, in sum, Jett owed Vance $18,900.00 between the unpaid rent and the unsecured loan, exclusive of any interest on the loan. Vance never sought to collect this sum or evict Jett from his Ridgetop Drive home for failure to pay rent. Indeed, the two remained roommates at the Ridgetop Drive location until Jett was arrested on charges of bank fraud in Milwaukee, Wisconsin on August 26, 2008. Jett was detained there for the remainder of 2008. Jett's tenancy with Vance ended in January 2009 after Vance physically moved Jett's belongings to 113 Maynard Avenue, N.W., a residential property that Jett bought earlier in 2008 in the name of Egress Development LLC. Neither party disputes that Jett participated in a scheme to defraud banks or that Jett purchased 113 Maynard Avenue, N.W. with the proceeds of that crime. The details of that scheme, although set forth in further detail by the Government, are not relevant given this lack of actual controversy.

---

[1] The Government makes no claim to the Ridgetop Drive property.

Shortly after Jett was arrested, Vance learned of the arrest through newspaper accounts and mutual acquaintances. (Dkt. #65, Exhibit 1, Vance Dep. 63, 66). Jett was detained until his release from Milwaukee County Jail on February 3, 2009 pursuant to a $50,000 appearance bond secured by his parents' home in White Cloud, Michigan. After his release, Jett returned and lived at 113 Maynard Avenue with his then-girlfriend Stacy McGleish.[2]

Later in 2009, Jett offered to sell Egress Development to Vance as a means to convey 113 Maynard Avenue. According to both Jett and Vance, the sale was intended to compensate Vance for the unsecured debt owed by Jett (Dkt. #65, Exhibit 2a, Jett Dep. 76:12-16; Exhibit 1, Vance Dep. 68:17-25). Jett also sought to provide a home for his girlfriend Stacy McGleish while he was away in prison. Vance does not dispute the authenticity of the written sale agreement signed by both Jett and Vance and dated September 26, 2009. On the same day, Stacey McGleish signed a lease renting the property from Vance. Jett, Vance, and McGleish later signed a two-year lease on January 1, 2010, as required by the original lease.

The written sale agreement conveyed Egress Development, and 113 Maynard Avenue along with it, from Jett to Vance for a listed purchase price of one dollar. (Dkt. #65, Exhibit 2a, Jett Dep., Exhibit 5). Although this price term is facially unambiguous, Vance contends that repayment of the prior debt owed by Jett to Vance and the lease agreement in favor of Stacy McGleish constitute additional valuable consideration given by Vance. The antecedent debts owed by Jett to Vance as additional consideration for 113 Maynard Avenue or Egress Development are mentioned nowhere in the purchase agreement.

Notably, the written sale agreement contains a merger clause entitled "15. Entire Agreement.":

---

[2] Jett married McGleish on July 8, 2010. She assumed his surname and is now known as Stacey Jett.

> The Parties represent that this is the entire agreement and understanding among the Parties, and that there are no representations, warranties, terms, covenants or conditions made by any other party except as herein expressly contained. This Agreement shall not be altered, waived, modified or canceled in any respect except in writing, duly executed by all of the Parties hereto, and no oral agreement or course of conduct to the contrary, shall be deemed an alteration, amendment, modification of [sic] cancellation.

The agreement also names the State of Michigan as its choice of law for the "construction, performance, and enforcement of this Agreement."

The Government also points out a number of facts uncontroverted by Vance, all of which suggest that Vance's ownership of 113 Maynard Avenue, N.W. is nominal. First, the taxes remain unpaid for 2008, 2009, and 2010 in an aggregate amount of $13,123.39. (Dkt. #65, Exhibit 6: Delinquent Tax Status). Vance asserts that this nonpayment is a rational reaction to the instant forfeiture action, as paying those taxes could result in an ever greater loss to him. Additionally, Vance does not make regular visits to the property and does not take responsibility for the property's maintenance. Stacey Jett has also fallen behind on her rent, but Vance testified he does not know how far behind she was or is and stated he had no intention of evicting Ms. Jett. Vance asserts this is natural result of their friendship. Both of Vance's assertions as to his motive may be true but still do not undermine the Government's position. For the reasons stated below, the Government's motion is granted.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The United States, because it is the movant, has the initial burden of identifying the portion of the

record that demonstrates a lack of any genuine issue of material fact on an essential element of the other party's claim. *Celotex v. Catrett*, 477 U.S. 317, 322-26 (1986). Once the United States did so, Vance, the Claimant, was required to produce specific facts to demonstrate that there was a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

This case is governed by 18 U.S.C. § 983. To have standing under 18 U.S.C. § 983, Vance must be an "owner" for purposes of the statute, which requires a "valid assignment of an ownership interest" and excludes "a nominee who exercises no dominion or control over the property." 18 U.S.C. §983(d)(6)(A), (d)(6)(B)(iii). Assuming that Vance has standing as an owner, the statute then mandates a two-part test to resolve this matter. The first test is for the United States "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Assuming the United States does this, Vance then has the burden to prove by a preponderance of the evidence that he is an innocent owner. 18 U.S.C. § 983(d)(1); *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F.Supp.2d 816, 827 (E.D. Mich. 2010).

Because in this case the property interest was acquired after Jett's conduct giving rise to forfeiture, Vance must establish that he is an "innocent owner" by demonstrating that at the time he acquired his interest in 113 Maynard Avenue, N.W., he was a 1) "bona fide purchaser…for value" of the property; and 2) he "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A)(i), (ii). A "bona fide purchaser for value" is someone who gives value in an arms-length transaction with the expectation that they will receive equivalent value in return. *See United States v. One 1996 Vector M12*, 442 F.Supp.2d 482, 486 (S.D. Ohio 2005) (because the Civil Asset Forfeiture

Reform Act ("CAFRA") does not define "bona fide purchaser for value," courts have turned to the implementation of "bona fide purchaser for value" under the Continuing Criminal Enterprise Act, 21 U.S.C. § 853(n)(6)(B)).

The United States moves for summary judgment on two grounds. First, it asserts that Vance lacks standing. Second, it asserts that even if he has standing he cannot show that he is an innocent owner because the undisputed facts demonstrate that he was never a bona fide purchaser of 113 Maynard Avenue, N.W. The Court is to view the evidence in the light most favorable to the nonmoving party; however, Vance may not merely allege that he has standing and is an innocent owner. *See, Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). He must show that evidence exists to support his position.

## ANALYSIS

Claimant Vance does not contest that the Government has met its initial burden of showing that the property in question is subject to forfeiture because it was purchased with the proceeds of criminal activity. The parties' briefs only contest two legal issues before the Court: whether Vance has standing under the controlling forfeiture statute to contest the Government's action against 113 Maynard Avenue and whether Vance can meet his burden of proving he is an innocent owner. The Court finds that the Government is entitled to summary judgment on either or both grounds.

This case is controlled by 18 U.S.C. § 983, which provides general rules for civil forfeiture proceedings and specifically governs the innocent owner defense available to claimants challenging such proceedings. It places the burden upon claimants to prove that they

are innocent owners by a preponderance of the evidence. 18 U.S.C. § 983(d)(1). In this case, the parties agree that subsection (d)(3)(A) applies to these facts. It reads in pertinent part:

> (A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

Vance does not dispute that his interest in 113 Maynard arose after the conduct giving rise to the forfeiture. The Government does not argue that Vance knew or reasonably had cause to believe the property was subject to forfeiture at the time his interest arose. Rather, the issue is whether Claimant paid sufficient value to qualify as an "innocent" owner with standing to challenge the forfeiture.

With respect to the issue of standing specifically, the Government also advances 18 U.S.C. § 983(d)(6), which reads in full:

> In this subsection, the term "owner"—
> (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
> (B) does not include—
> (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
> (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or
> (iii) a nominee who exercises no dominion or control over the property.

The Government argues that Vance lacks standing to challenge this forfeiture because the statute limits standing to "owners" with a "valid" assignment of ownership interest and specifically excludes "a nominee who exercises no dominion or control over the property." 18 U.S.C. §

983(d)(6)(A), (d)(6)(B)(iii). Because the purchase agreement expressly states that the consideration paid by Vance for 113 Maynard Avenue. N.W. was only one dollar, the Government observes that the parol evidence rule operates to exclude evidence of other, contradictory consideration. As such, Vance paid no value for 113 Maynard Avenue, which satisfies one of several indicia of a fraudulent transfer by Jett set forth and established by the Government. The Government thus asserts that Vance is not an owner within the meaning of the statute because the sale from Jett to Vance constituted an invalid, fraudulent transfer of Jett's ownership interest under Michigan law. The Government cites *United States v. $746,198 in U.S Currency*, 299 F.Supp.2d 923, 933 (S.D. Iowa 2004), for the proposition that claimants failing to establish themselves as owners under the statute lack standing.

Vance replies that Article III standing is satisfied wherever an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property. *United States v. Contents of Accounts Nos. 3034504504 and 144-07143*, 971 F.2d 974, 985 (3d Cir 1992). Vance asserts that he must only claim a facially colorable interest in the seized property. Vance did not initially address the Government's argument that the parol evidence rule bars evidence of any other consideration and effectively prevents his ownership interest from ever legitimately arising. In a supplemental brief requested by the Court, Vance argues that the purchase agreement is ambiguous because a document titled "Assignment of Real Estate" was also executed and references "good and valuable consideration." Vance further contends that the integration clause is contradicted by the additional, undated, one-page "Assignment of Real Estate." In any event, the reference to "good and valuable consideration" neither renders the stated consideration of one dollar ambiguous nor

suffices to allow the introduction of evidence that would contradict that express term in violation of the parol evidence rule.

Vance does recognize that in the Sixth Circuit a litigant may lack standing if he is a mere straw man, *United States v. $515,060.42*, 152 F.3d 491 (6th Cir. 1998), but argues that he is not a straw man because both parties acknowledge the existence of antecedent debt. Vance asserts "[t]his transfer of property was meant, in part, to repay that debt," but does not cite to any authority supporting an exception to the parol evidence rule's application under these circumstances. Rather, Vance argues that a Ninth Circuit decision cited by the Government in which a straw man claimant did not have standing to contest a civil forfeiture is distinguishable. *United States v. 5208 Los Angeles Way*, 385 F.3d 1187 (9th Cir. 2004).

Yet, the authority Vance cites tends to undermine his position. In *Contents of Accounts Nos. 3034504504 and 144-07143*, the Third Circuit noted that in forfeiture cases, the standing "inquiry is more focused" than the usual inquiry into injury-in-fact, causation, redressability, and other prudential factors. 971 F.2d 974, 985 (3d Cir. 1992). The court further agreed that "courts uniformly reject[] standing claims put forward by nominal or straw owners." *Id.* (citation omitted). The Third Circuit also cited favorably to a Sixth Circuit decision holding that possession of bare legal title alone by one who does not exercise dominion and control over the property is insufficient to establish standing to challenge a forfeiture. *Id.* (citing *United States v. 526 Liscum Dr.*, 866 F.2d 213, 217 (6th Cir. 1988)). The Eighth and Eleventh Circuits have agreed with the Sixth Circuit that bare title absent the exercise of both dominion and control will not suffice to qualify one as owner of the real estate at issue. *United States v. 900 Rio Vista Blvd.*, 803 F.2d 625 (11th Cir. 1986); *United States v. One 1945 Douglas C-54 (DC-4) Aircraft*, 604 F.2d 27 (8th Cir. 1979).

The Court is aware of one case supporting Vance's argument that these matters are not appropriately addressed as threshold matters of standing. The Seventh Circuit disagreed with the clear weight of authority, including the Sixth Circuit, holding that these questions should not be explored as a threshold standing consideration and instead finding a sufficient stake in the simple fact that the claimant will "lose the opportunity to receive the proceeds, if and when the land is sold." *United States v. 5 S 351 Tuthill Road*, 233 F.3d 1017, 1022 (7th Cir. 2000).[3] Although nominally persuasive in that the facts similarly involved an attempted forfeiture and a straw owner claimant, this case is not controlling given the abundance of relevant, contrary Sixth Circuit authority and the tension of *United States v. 5 S 351 Tuthill Road* with the Sixth and other sister circuits. "[D]ue to concerns about straw man transfers, naked possession claims are insufficient to establish standing." *$515,060.42 in U.S. Currency*, 152 F.3d at 498 (quotation marks omitted). "Similarly, bare legal title, in the absence of assertions of dominion, control or some other indicia of ownership of or interest in the seized property, is insufficient to confer standing to challenge a forfeiture." *Id.* at n.6.

Ownership interests are generally defined by the law of the state in which the interests arise absent explicit federal statutory language to the contrary. *United States v. Smith*, 966 F.2d 1045, 1054 n.10 (6th Cir. 1992) (referencing state law in forfeiture proceeding absent federal statutory direction in 21 U.S.C. § 853 for determining scope of property rights); *see also 5208 Los Angeles Way*, 385 F.3d at 1191 n.3 (whether the claimant has a sufficient interest to satisfy standing under 18 U.S.C. § 983 is determined by reference by state law). With regard to 18 U.S.C. § 983 specifically, the Eighth Circuit reached the same conclusion, also holding that

---

[3] "It seems to us that in scrutinizing a would-be forfeiture plaintiff's interest for evidence of straw ownership, courts are not policing their own exercise of power, but policing those whom they perceive to be doing the bidding of drug traffickers, by refusing to provide an avenue of legal redress. One might call it judicial abdication in the service of judicial activism." *Id.* at 1023.


"[o]wnership interests are defined by the law of the State in which the interest arose . . . ." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). Although Vance disputes that this Court should look to state law absent contrary federal direction, he cites no authority supporting his position nor does he articulate an alternative approach to determining the scope of property rights.

Moreover, as the Government notes, the purchase agreement is expressly governed by Michigan law. Transfers of ownership interests in real estate in Michigan are fraudulent if made with actual intent to hinder, delay, or defraud any creditor. M.C.L. 566.34(1)(A). When Jett purchased 113 Maynard Avenue, N.W. on April 25, 2008, he was a debtor of the government. He purchased 113 Maynard Avenue, N.W. for $259,000.00. (J. Jett Dep. Exh. 24, Receipts and Disbursements Ledger). Actual intent to defraud under that statute may be inferred from the "badges of fraud" codified at M.C.L. 566.34(2). The Government sets forth a number of relevant "badges" and convincingly demonstrates the undisputed presence of each. Notably, Vance does not respond directly to these arguments, instead relying on his argument that this should not be considered as a threshold matter. It is beyond dispute that (1) the debtor (Jett) retained possession or control after the property was transferred to Vance[4]; (2) before the transfer was made or incurred, debtor had been sued or threatened with suit; (3) the transfer was of substantially all of debtor's assets; (4) the value of the consideration received by the debtor was *not* reasonably equivalent to the value of the asset transferred; and (5) the debtor was insolvent or became insolvent shortly after the transfer was made. M.C.L. 566.34(2)(b), (d), (e), (h), and (i). As a concurrence of several of these factors will always make out a strong case in support of fraudulent intent, *see John Ceci, P.L.L.C. v. Johnson*, 2010 WL 1872927 at *4 (Mich. App. 2010) (citing *Bentley v. Caille*, 289 Mich. 74, 78 (1939)), an inference of actual

---

[4]His wife, Stacy Jett, retained possession and control after Jett went to prison.

intent to defraud by Jett is fair even while allowing Vance the benefit of all favorable inferences. Recipients of fraudulent transfers of property interests cannot qualify as owners possessing a validly transferred interest under the civil forfeiture statute. 18 U.S.C. § 983(d)(6)(A), (d)(6)(B)(iii).

Most notably, Vance fails to rebut the Government's argument regarding the fourth badge of fraud that he is nothing more than a straw man who paid no value by virtue of the purchase agreement and the parol evidence rule. M.C.L. 566.34(1)(h). There is no factual dispute that Jett owed Vance $18,900.00. According to Vance, the transfer of property was meant, in part, to repay that debt. In his subsequent brief on the subject, Vance argues that the reference to "good and valuable consideration" in the one-page property sale addendum to the agreement to sell Egress throws the express price term of one dollar into question and permits the Court to consider contradictory evidence. However, even if the precedent debt by Jett to Vance is considered, the $18,900.00 owed is not reasonably equivalent to the value of the property.

Further, "[a]ccording to the parol evidence rule, 'parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.'" *Wood Care X, Inc. v. Dep't. of Cmty Health*, 2011 WL 222245 at *8 (Mich. Ct. App. Jan. 25, 2011) (citing *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich. App. 486, 491 (1998)). Additionally, "[w]hen the parties choose to include an integration clause, they clearly indicate that the written agreement is integrated; accordingly, there is no longer any 'threshold issue' whether the agreement is integrated and, correspondingly, no need to resort to

parol evidence to resolve this issue." *UAW-GM Human Resource Center*, 228 Mich. App. at 495.

The consideration is clearly stated on the purchase agreement as one dollar and the purchase agreement contains an integration clause. Although Vance also argues that the sale of Egress Development did not effect the sale of 113 Maynard and should therefore be treated as an entirely separate agreement, this argument is not persuasive. The sale to Vance of Egress Development, which held title to 113 Maynard in its name, effectively conveyed the property for the stated consideration of one dollar. Vance cites nothing in the case law to support his request that the Court consider facts outside the purchase agreement in violation of the parol evidence rule. And as previously noted, even if these were considered, it would not change the outcome.

Although the Government agrees that there existed an antecedent debt, the purchase agreement itself precludes any evidence that might contradict the stated consideration of one dollar, rendering Vance a straw man without standing. *United States v. $746,198 in U.S Currency*, 299 F.Supp.2d 923, 933 (S.D. Iowa 2004). Further, even were it considered, the antecedent debt was not reasonably equivalent to the value transferred. The Government demonstrates convincingly that the transfer by Jett to Vance was fraudulent under Michigan law, which precludes Vance from qualifying as an owner as under 18 U.S.C. § 983(d)(6)(A).

The Sixth Circuit's position is that "bare legal title, in the absence of assertions of dominion, control or some other indicia of ownership . . . is insufficient to confer standing to challenge a forfeiture." *$515,060.42 in U.S. Currency*, 152 F.3d at 498 n.6 (quotation marks omitted); *see also $746,198 in U.S Currency*, 299 F.Supp.2d at 933. Vance's attempts at distinguishing *5208 Los Franciscos Way* as involving a gift do nothing to change the result, which is that because the conveyance itself was fraudulent under state law, the recipient is not an

an owner under 18 U.S.C. § 983(d)(3)(A). Vance therefore lacks standing to contest the Government's forfeiture of 113 Maynard Avenue, N.W.

## CONCLUSION

The Claimant lacks standing to contest the Government's forfeiture of 113 Maynard Avenue. Even were the court to conclude that Claimant does have Article III standing as a matter of law, he is not an "owner" under Michigan Law. Vance fails to offer "sufficient proof of property interests to establish standing and avoid summary judgment on the standing issue." *$515,060.42 in United States Currency*, 152 F.3d at 499. First, the purchase agreement recording the transfer of 113 Maynard to Vance for only one dollar convincingly demonstrates that Vance is a straw man as a matter of law by virtue of the parol evidence rule. Second, the Government has established without any dispute from Vance several additional facts which constitute indicia of fraud under Michigan law. As previously noted, even $18,900.00 is not equivalent value. Third, Vance consequently cannot meet the statutory definition of owner under 18 U.S.C. § 983(d)(6) because the assignment was invalid under Michigan law. In the Sixth Circuit, one who cannot qualify as an owner lacks statutory standing to contest civil forfeitures under 18 U.S.C. § 983, even if Article III standing might otherwise exist. *$746,198 in United States Currency*, 299 F. Supp. 2d at 932-33. The Court accordingly **grants** the Government's motion for summary judgment.

An Order and Judgment consistent with this Opinion will enter.

Date: December 2, 2011                                /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge